**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MODESTO CARLOS, | ) | NO. CV 13-3228-AS |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security, | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On May 14, 2013, Plaintiff filed a Complaint seeking a review of the Commissioner's denial of disability benefits. (Docket Entry No. 3). On August 21, 2013, the matter was transferred and referred to the current Magistrate Judge. (Docket Entry No. 10). On November 20, 2013, Defendant filed an Answer and the Administrative Record ("A.R."). (Docket Entry Nos. 20-21). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11, 14). On February 24, 2014, the parties filed a Joint Stipulation ("Joint Stip.")

setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 25).  The Court has taken this matter under submission without oral argument.   See L.R. 7-15; see "Case Management Order," filed May 16, 2013. (Docket Entry No. 6).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former truck driver and laundry worker (A.R. 84, 95), asserts disability beginning March 24, 2009, based on alleged physical impairments. (A.R. 32).  The Administrative Law Judge ("ALJ") examined the record and heard testimony from Plaintiff and a vocational expert on January 31, 2012.[1]  On August 23, 2012, the ALJ issued a decision denying Plaintiff's application for disability benefits. (A.R. 32-38).  The ALJ found that Plaintiff's medically determinable impairments - hyper tension, Type II diabetes mellitus, a history of transient ischemic attack, disc bulges of the lumbar spine, Graves's disease, and obesity - did not significantly limit his ability to perform basic work activities.  (A.R. 34).  Accordingly, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments that was severe, and thus was not disabled at any time from the alleged disability onset date through the date of the ALJ's decision.  (Id.).

---

[1]   The ALJ held three hearings in this matter.  The first hearing, on August 11, 2011, was adjourned shortly after commencement in order to permit Plaintiff an opportunity to retain private counsel. (A.R. 100-103).   The second hearing, during which Plaintiff and the vocational expert testified, was conducted on January 31, 2012. (A.R. 77-100). During the third hearing on July 20, 2012, the ALJ heard testimony from Gerald Weingarten, M.D., a medical expert.   (A.R. 61-76). Plaintiff testified with the aid of a Spanish language interpreter at the hearings and was represented by counsel at the second and third hearing.

On March 8, 2013, the Appeals Council denied review. (A.R. 1-3).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred: (1) in finding that he did not have a severe impairment or combination of impairments that were severe; (2) in rejecting the opinion of Plaintiff's treating physician; and (3) in his assessment of Plaintiff's credibility.

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. 42 U.S.C. § 405(g); See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Hoppai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (internal citations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(inferences "reasonably

drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Administration's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Administration's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and quotations omitted); see Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same).  However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim.  See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its own judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998)(internal citations omitted).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Administration's findings are supported by substantial evidence and are free from material[2] legal error.

---

[2]    The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (A decision of the ALJ will not be reversed for errors that are harmless).

4

**A.   Applicable Law**

"The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing 42 U.S.C. § 423 (d)(1)(A)).  The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity.  Id. at § 404.1520(a)(4)(I).  "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit."  20 C.F.R. §§ 404.1510, 404.1572.  If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities.  See 20 C.F.R. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686.  The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).  Webb v. Barnhart, 433 F.3d at 686.  An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Id. If the ALJ concludes that a claimant lacks a medically severe

impairment, the ALJ must find the claimant not to be disabled. Id.; 20 C.F.R. § 1520(a)(ii). Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling [him] to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's residual functional capacity ("RFC"), that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments. 20 C.F.R. § 416.920(e). Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether – taking into account the claimant's age, education, work experience and RFC – there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Id.

6

**B.    Relevant Facts**

Plaintiff's Testimony

Plaintiff testified that he worked as a truck driver until an injury at work prevented him from working any further.[3] (A.R. 84). Plaintiff claimed that he was in a forklift when it fell from the ramp to the floor and that the force of the impact caused injury to his back, shoulders, leg, and neck. (Id.). Plaintiff stated that he filed a worker's compensation claim and was eventually treated by Dr. Lucero, who provided therapy and acupuncture. (A.R. 84-85). According to Plaintiff, Dr. Lucero did not recommend surgery because Plaintiff did not have significant disc damage to his back and when Dr. Lucero released him from treatment, he did not tell Plaintiff whether his "future activities would be restricted in any way." (A.R. 86). Plaintiff received a monetary settlement as a result of his workplace injury. (A.R. 86-87).

Plaintiff was diagnosed with diabetes approximately five years ago and started taking insulin about four years ago. (A.R. 87). He stated that his blood sugar levels vary and that when the level is high, his mouth gets dry and he feels weak. (A.R. 88). This happens every three days and he injects himself with insulin which makes him feel better.

---

[3]    Although there was no testimony at the administrative hearing about the date of the injury, work status reports prepared by the physician who treated Plaintiff for his worker's compensation claim, list the dates of Plaintiff's injury as March 24, 2009, August 1, 2008, and November 1, 2007. (A.R. 354, 357). One of these dates - March 24, 2009 - corresponds to Plaintiff's alleged disability onset date.

When his blood sugar levels are low, it causes his body to shake and his pigmentation to change.  This happens every two days or twice a week and he eats a little candy or chocolate to allow his blood sugar levels to increase. (A.R. 88-89).  Plaintiff testified that although he was still working when he had diabetes, the condition presently affects his ability to work because he is forgetful. (A.R. 89).

Plaintiff takes medication for his diabetes, blood pressure, cholesterol, and thyroid, prescription pain medication for pain on his back or head, and Tylenol when he has severe headaches, medication in order to sleep, and baby aspirin. (A.R. 89-90).  Plaintiff claimed that he took the pain medication daily or every two days and that when he has a lot of back pain, he will put ointment on his back in order to alleviate his pain. (A.R. 90).  Plaintiff also testified that when he is under a lot of stress, he is not able to remember things and Plaintiff denied seeing a psychiatrist or a counselor. (Id.).

Plaintiff testified that both his knees and the bottom of his feet swell and they both "feel like they fall asleep." (A.R. 90).  Plaintiff also indicated that he experiences numbness on his back and hands. (A.R. 91).  When asked why he felt that he could not work, Plaintiff stated that his back and feet hurt and that he cannot walk or stand for a long period of time.  (Id.).  Plaintiff also claimed that sitting caused his back to feel numb and "then it radiates down to my feet." (Id.).  When this happens, he needs to lay down for one or two hours. (Id.).

Plaintiff stated that he lives with his sister and her family, in

8

a second-floor apartment, which he accesses by using the stairs. (A.R. 91-92). He helps with chores by assuming vacuuming duties and taking the clothes down, but that when he does the latter, his back begins to hurt. (A.R. 92). He also drive his sister's children to their nearby school. (Id.). He testified that the physicians at Harbor UCLA have advised him that he needs to lose weight and should walk a little more often, but he claimed that he is unable to do so (A.R. 92.) A physician also recommended that he should be moving his feet when he is sitting, in order to assist blood circulation and instructed him to exercise more. (A.R. 93-94). At least one physician has instructed him to see a psychiatrist but he is unable to do so because he lacks the money. Plaintiff also claimed that his lack of funds was a contributing factor for his stress. (A.R. 94).

### Vocational Expert - Barbara Miksic

Vocational Expert Barbara Miksic testified that Plaintiff's prior work included "[lifting] at a light level . . .[and] driving at a medium level." (A.R. 95). She found that someone of Plaintiff's "age, educational background and vocational history . . . could perform the full exertional and postural range of medium work[]" and could also perform the work of a laundry worker at the light level if "the [same] individual can lift 20 pounds occasionally, 10 pounds frequently, can stand and walk six hours of an eight hour day . . . must have the option to sit and rest for up to five minutes every [60] minutes . . . can sit six hours of an eight-hour day, but must have the option to stand and change body positions, stretch and move about a little bit every 30

minutes[]" (A.R. 95-96).[4]  However, the same individual would not be able to perform the Plaintiff's past work if the individual was "limited to standing and walking a total of two hours in an eight hour day," but could perform the "work of a sticker at the sedentary level" and would also be "able to work as a table worker," and that such jobs were available in the Long Beach and Glendale areas. (A.R. 96-97).  Milsic also testified that the same individual would not be able to perform the identified jobs or any other jobs if the individual "would need to lie down for up to two hours in an eight-hour work day." (A.R. 98).

Medical Expert - Dr. Weingarten

Dr. Gerald Weingarten, who reviewed Plaintiff's medical records but did not examine Plaintiff, testified that Plaintiff's medical records do not support a finding that Plaintiff has functional limitations including the need to lay down during the day. (A.R. 68).  Dr. Weingarten concluded that Plaintiff does not have an impairment or combination of impairments that either meets or is equivalent to a listed impairment. (Id.).  He noted that Plaintiff's complaints of experiencing pain while standing, sitting down, or walking were not confirmed by an MRI taken in 2009 in connection with Plaintiff's worker's compensation claim which indicated that Plaintiff did not have spinal stenosis, an affliction that can ordinarily cause such pain. (Id.).  Dr. Weingarten also stated that the medical records did not

---

[4]     Upon questioning from Plaintiff's attorney, Milsic clarified that Plaintiff's potential work as a laundry worker would be limited to handling linen, a fabric weighing less than "normal clothing." (A.R. 98).

provide any explanation or support for Plaintiff's reported symptoms of occipital headaches and a choking at mid-sternal sensation. (A.R. 68-69). "He had a complete work-up . . . They couldn't really find anything wrong . . . they did a complete neurologic work-up and they didn't really find anything." (A.R. 69). Dr. Weingarten noted that Plaintiff had been successfully treated for Graves' Disease with radioactive iodine treatment and thyroid replacement therapy, his transient ischemic attack in October 2009 did not cause residual neurologic deficits, and that although Plaintiff had been seen for chest pains on various occasions, he did not have coronary artery disease. (A.R. 67-68).

### Consultative Orthopaedic Examination - Dr. Timothy Ross

Dr. Timothy Ross, an orthopaedic surgeon, performed a consultative orthopaedic examination of Plaintiff on August 31, 2010. (A.R. 328-34). Plaintiff reported that he had sustained injuries in three separate work injuries on November 26, 2007, August 16, 2008 and March 24, 2009 and complained of dull pain in his neck, back, hips and extremities which became worse with standing, walking, sitting and driving. (A.R. 328). Dr. Ross found that Plaintiff was pleasant, had a "normal gait," a normal heel-to-toe pattern, did not use an assistive device to ambulate, and had normal swing and stance phases. (A.R. 329). An examination of the upper and lower extremities was within normal limits even though Plaintiff complained of moderate subjective tenderness and rendered "limited effort" on range of motion testing with no spasm. (A.R. 330). Dr. Ross concluded that Plaintiff's "subjective complaints outweigh objective findings and Waddell's signs are strongly positive." (A.R.

331).   He also found that "[a]lthough [Plaintiff] would certainly benefit from a comprehensive weight loss program, he is otherwise in need of no additional supervised musculoskeletal treatment." (A.R. 331-32).   Based on his examination, Dr. Ross was "unable to identify evidence of any significant impairment-related physical limitation." (A.R. 332).

## C.   Analysis

As set forth below, the ALJ's determination that Plaintiff does not suffer from a severe impairment or combination of impairments that is sever is supported by substantial evidence in the record.   First, the ALJ properly found that Plaintiff's subjective complaints were not corroborated by Plaintiff's medical records and the results of the orthopaedic examination.   (A.R. 35).   The ALJ noted that although Plaintiff complained of intermittent chest pain, a transthoracic echocardiogram, coronary angiogram and left heart catheterization in October 2011 did not reveal any evidence of coronary artery disease. (A.R. 37, 585-88, 596-97).   Similarly, Plaintiff's complaints of numbness emanating from his back towards his feet, as a result of work injuries sustained in 2007, 2008 and 2009, were not supported by the consultative orthopaedic examination conducted by Dr. Ross in August 2010. (A.R. 37).   Dr. Ross did not find anything orthopaedically wrong with Plaintiff and a lumbar X-ray taken during this examination showed minimal degenerative changes.   (A.R. 37, 328-30).   This finding was consistent withe the results of the MRI of Plaintiff's spine from 2009 which revealed "only a minor disc bulge . . . with no evidence of spinal stenosis, foraminal narrowing, or signal abnormality within the exiting

or traversing nerve roots (A.R. 37, 353).

The ALJ's finding was supported by Dr. Weingarten's testimony that the medical record did not support any functional limitations and his opinion that the 2009 MRI was "essentially negative" and did not support Plaintiff's alleged need to lie down during the day. (A.R. 37) (See A.R. 67-68). The ALJ found Dr. Weingarten's opinion to be consistent with the evidence as a whole, noting that the record did not include any treating medical opinions assessing functional limitations or "evidence of any impairment that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months[.]" (A.R. 36). See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (non-examining physician's opinion may constitute substantial evidence when opinion is consistent with independent evidence of record).

Second, the ALJ noted that Plaintiff had a history of diabetes for which he had been treated with insulin and that Plaintiff's complaints of head and arm numbness in September 2009 were secondary to Plaintiff's own failure to take insulin for two days. (A.R. 36, 388). Moreover, Plaintiff's admission that he continued to work after he was diagnosed with diabetes (A.R. 89) also undermines any contention that his diabetes was a severe impairment. The ALJ properly determined that Plaintiff's improving condition when he was compliant with medication and treatment supported a finding of nondisability.

Third, the ALJ observed that as of August 2010, Plaintiff's complaints of occipital headaches and a choking sensation were noted to

13

be alleviated through rest.  (A.R. 36, 530).   In addition, outpatient clinic progress notes from November 2009 revealed that Plaintiff was "doing well," his feet were in good condition, and he had good glycemic control.  (A.R. 36, 380).  Progress notes from October 2010, February 2011 and May 2011 noted that Plaintiff has no known diabetes complications (A.R. 444, 450, 466).  Records from October 2011 reported that Plaintiff had no sensory impairment in his feet even though he complained of numbness in his feet.  (A.R. 36, 686).  The ALJ noted that Plaintiff's high blood pressure and cholesterol levels were at goal in late 2009 (A.R. 36, 380), and that, with respect to Plaintiff's transient ischemic attack in October 2009, Plaintiff had been treated with therapy, reported improvement in symptoms, and was not required to undergo any physical or occupational therapy upon discharge. (A.R. 36, 551). Similarly, the ALJ found that Plaintiff's thyroid condition was being effectively treated and that there was no medical evidence of any health complications or exacerbations as a result of this condition. (A.R. 37). See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (the ALJ may consider the "type, dosage, effectiveness, and side effects of any medication [taken] to alleviate . . . pain or other symptoms"); see also Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of considering eligibility for SSI benefits.")

Fourth, the ALJ observed that physicians had attributed Plaintiff's short-lived episodes of worsening diabetes to Plaintiff's weight gain and non-compliance with dietary instructions and a failure to check his blood sugar.  (A.R. 36, 450).  Plaintiff's inaction in this regard

14

supports a finding that the Plaintiff is not disabled.  See 20 C.F.R. §§ 404.1530, 416.930 ("[i]f you do not follow the prescribed treatment without a good reason we will not find you disabled).

Finally, the ALJ determined that Plaintiff's obesity did not support a finding of disability, noting that the available medical evidence did not suggest that his weight caused any functional limitations.  Plaintiff demonstrated normal gait without the need for any assistive device during the consultative orthopaedic examination and did not require any supervised musculoskeletal treatment.  (A.R. 37, 331-32).  See Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003) (obesity may be considered in determining disability if determined to impact musculoskeletal, respiratory, or cardiovascular system).

Accordingly, the ALJ concluded that, despite Plaintiff's assertions of functional limitations, the objective evidence did not support a finding that Plaintiff was disabled.  This finding was corroborated by Dr. Weingarten's opinion as well as the results of the orthopaedic evaluation conducted by Dr. Ross.  Plaintiff contends that this determination was in error and that the ALJ should have found the combined effects of Plaintiff's impairments to be severe. (See Joint Stip. 3).  However, the existence of one or more medically determinable conditions does not necessarily mean that symptoms are severe or disabling, as defined by the Social Security regulations.  The impairment must be severe and verifiable, because otherwise "disability benefits would be available for the asking." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Here, Plaintiff's subjective complaints were not substantiated by the record.  "There are no treating medical

opinions assessing functional limitations, and no evidence of any impairment that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months per the durational requirement." (A.R. 36)  Thus, the ALJ was entitled to give less weight to Plaintiff's assertions of physical limitations which were not supported by the objective medical evidence, and give greater weight to the opinion of the medical expert and the findings of the consultative orthopaedic examination which were consistent with the objective medical evidence. The ALJ properly found that the record as a whole did not provide any support for the asserted limitations Plaintiff claimed.  This alone constitutes substantial evidence to support the ALJ's determination. Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001); see also Thomas v. Barnhard, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Plaintiff contends that the ALJ erred in rejecting the opinions of Plaintiff's treating physician, specifically, the opinion of Dr. Lucero, the physician who treated Plaintiff after his 2009 work related injury in connection with his worker's compensation claim and opined that Plaintiff was unable to work because of his injury. (Joint Stip. 10); (A.R. 354-59).

However the records created by Dr. Lucero consisted of a single page pre-printed form on which a check mark was placed next to the following pre-printed statement: "Plaintiff is temporarily totally

16

disabled until the next examination on: _____." See A.R. 354. On October 9, 2009, Dr. Lucero signed such a form on which he checked the above-referenced statement and wrote "11/9/09" as the date of the next examination. (A.R. 357).  On November 6, 2009, Dr. Lucero signed a similar form on which he checked the above-referenced box and wrote in "12/5/09" as the date of the next examination.  (A.R. 354).  On November 13, 2009, Dr. Lucero signed a different form in which he placed a check next to the statement "Patient is disabled greater than one (1) year."  However, Dr. Lucero did not provide any information regarding Plaintiff's symptoms on the dates in question, the nature of the injury or condition that caused such symptoms or any objective clinical findings regrading such symptoms and did not identify any specific functional limitations.  The ALJ pointed out, during the administrative hearing on January 31, 2012, that he had only received "some work status reports that are check box reports with no background." (A.R. 81). Plaintiff's counsel stated that he would be submitting additional records and was granted additional time to do so.  (A.R. 81-82). However, as indicated above, the additional records submitted did not include any reports or records from Dr. Lucero and a review of the records submitted did not provide any support for Dr. Lucero's statement that Plaintiff was disabled.  Moreover, Plaintiff's own testimony regarding his treatment did not support for Dr. Lucero's opinion. Plaintiff testified that Dr. Lucero "gave [him] therapy and acupuncture" (A.R. 85) but did not recommend surgery because "the amount of disks (sic) that were damaged were not that many." (A.R. 86).  Plaintiff also testified that Dr. Lucero did not tell him that he was restricted from any future activities at the time he was discharged.  "To be honest with you, he didn't tell me anything. I don't know whether he told the

1  attorney or not." (A.R. 86).

2

3       The ALJ was not required to give any weight to the "check box"

4  forms signed by Dr. Lucero because there was no explanation or support

5  for the conclusion that Plaintiff was "temporarily totally disabled"

6  until his next appointment or "disabled for greater than one year."

7  (A.R. 354-55. 357-58).  This is because "[t]he ALJ need not accept the

8  opinion of any physician, including a treating physician, if that

9  opinion is brief, conclusory and inadequately supported by clinical

10 findings."  Thomas, 278 F.3d at 957.  See also Meanel v. Apfel, 172 F.3d

11 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory,

12 minimally supported opinion).  Thus the ALJ was entitled to give greater

13 weight to the opinion of the examining doctor and non-examining medical

14 expert whose opinions were supported by, and consistent with, the

15 medical record as a whole.  See Tonapetyan v. Halter, 242 F.3d 1144,

16 1149 (9th Cir. 2001) (examining physician's opinion may constitute

17 substantial evidence when opinion is consistent with independent

18 evidence in the record).

19

20      Plaintiff takes exception with the ALJ's failure to state "reasons

21 for discounting or addressing" the opinion of Dr. Lucero.  (Joint Stip.

22 11).  However, an "[a]n ALJ's failure to cite specific evidence does not

23 indicate that such evidence was not considered[.]"  Black v. Apfel, 143

24 F.3d 383, 386 (8th Cir. 1998) (internal citation omitted).[5]  Moreover,

25 an ALJ is not required to discuss evidence that is neither "probative"

26 _____

27      [5]  As set forth above, the ALJ pointed out the deficiencies with the
   check box forms that were submitted and provided Plaintiff an
28 opportunity to supplement the record.

nor "significant." Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)(citing Black, 143 F.3d at 386). Here, Dr. Lucero's opinion that Plaintiff was temporarily disabled for worker's compensation purposes was of little value to the ALJ's determination of disability because Dr. Lucero treated Plaintiff was in connection with a worker's compensation claim. The Ninth Circuit has held that "[t]he categories of work under the social security disability scheme are measured quite differently" than considerations of a worker's compensation claim. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1998). In addition, a finding of disability is an issue reserved for the Commissioner and not a physician. See Mcleod v. Astrue, 640 F.3d 881, 884-85 (9th Cir. 2011) (ALJ properly rejected doctor's opinion on whether claimant "could work at any job" as such determination was for Social Security Administration to make, and not for a physician).

Plaintiff also contends that the ALJ had a duty to supplement the record if he believed that he needed additional worker's compensation medical records. (Joint Stip. 11). This contention must fail because an ALJ's duty to develop the record only vests when there is "ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150). Here, the ALJ considered the entire record and determined that Plaintiff was not disabled. The ALJ's determination was not based on an ambiguous or inadequate record and was supported substantial evidence. Thus, the Court finds that the ALJ did not err in failing to discuss Dr. Lucero's conclusory opinion regarding Plaintiff's disability in his report.

19

1    Plaintiff asserts that the ALJ erred in assessing Plaintiff's
2  credibility and in failing to provide specific, clear, and convincing
3  reasons for challenging plaintiff's credibility.   (Joint Stip. 16).
4  Where, as here, the ALJ finds that a claimant suffers from a medically
5  determinable impairment that could reasonably be expected to produce his
6  or her alleged symptoms, the ALJ must evaluate "the intensity,
7  persistence, and functionally limiting effects of the symptoms to
8  determine the extent to which the symptoms affect the individual's
9  ability to do basic work activities.  This requires the [ALJ] to make
10 a finding about the credibility of the individual's statements about the
11 symptom(s) and its functional effect." Social Security Ruling ("SSR")
12 96-7p.

13

14   An ALJ's assessment of a claimant's credibility is entitled to
15 "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir.
16 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may
17 not discount the claimant's testimony regarding the severity of the
18 symptoms without making "specific, cogent" findings. Lester v. Chater,
19 81 F.3d 821, 834 (9th Cir. 1995); see also Berry v. Astrue, 622 F.3d
20 1228, 1234 (9th Cir. 2010) (reaffirming same) but see Smolen v. Chater,
21 80 F.3d 1273, 1283-84 (9th Cir. 1996) (indicating that ALJ must provide
22 "specific, clear and convincing reasons to reject a claimant's testimony
23 where there is no evidence of malingering).   see Rashad v. Sullivan,
24 903 F.2d 1229, 1231 (9th Cir. 1990).[6]  Generalized, conclusory findings

25

26     [6]  In the absence of evidence of "malingering," most recent Ninth
   Circuit cases have applied the "clear and convincing" standard.  See,
27 e.g., Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012);
   Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v.
28 Commissioner, 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v.

do not suffice.   See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); and Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). See also Social Security Ruling 96-7p.

Here, the ALJ, after considering the record and the testimony presented at two Administrative Hearings, as well as the additional medical records that were submitted, found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms not credible to the extent they are inconsistent with the ALJ's finding that Plaintiff has no severe impairment or combination of impairments that are severe.  (A.R. 35).  The ALJ stated sufficient reasons for his adverse credibility finding.

As set forth above, the ALJ noted that "the evidence as a whole, however, [did] not corroborate the [plaintiff]'s testimony." (A.R. 35).

---

Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases).  As set forth infra, the ALJ's findings in this case are sufficient under either standard, so the distinction between the two standards (if any) is academic.

The ALJ noted that Plaintiff claimed that prolonged periods of sitting or standing caused him to experience numbness in his back that extended to his feet, he needed to lie down for 1 to 2 hours a day, and that he felt very tired after a 15 to 20 minute walk. (A.R. 35). However, the ALJ determined that Plaintiff's subjective allegations were not supported by the medical records, the opinion of the medical expert who reviewed all of the available records, or the findings of the orthopaedic doctor who examined and evaluated Plaintiff. The ALJ noted that Dr. Weingarten testified that the medical records he reviewed did not support a finding of any functional limitations and the ALJ found that Dr. Weingarten's testimony was in fact consistent with the evidence as a whole. (A.R. 36). The Consultative examiner found, based on his examination of Plaintiff, that there was nothing orthopaedically wrong with Plaintiff and the ALJ found this conclusion to also be consistent with the medical record, including an MRI that was taken in 2009. (A.R. 37). The ALJ also noted that, with respect to each impairment that allegedly caused Plaintiff to suffer from functional limitations, the medical record revealed that these conditions had either improved or were under control with treatment and medication. (A.R. 36-37). See 20 C.F.R. §§ 404.1529 (c)(3)(iv),(v); 416.929(c)(3)(iv), (v) (ALJ may consider use of medication and treatment history when evaluating credibility); Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003) (ALJ properly rejected pain complaints where ALJ noted that pain was under control). Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Lack of supporting objective medical evidence is a key consideration for the ALJ in

evaluating credibility. See 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) (an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence," in determining disability). As set forth above, however, the medical evidence supports the ALJ's finding that Plaintiff's asserted functional limitations were not as disabling as he claimed. The results of the consultative examination also corroborate this determination.

The ALJ also found that Plaintiff did not appear to be compliant with his doctor's orders, noting that "short-lived episodes of worsening diabetes control were attributed to [plaintiff] not checking his blood sugar . . . and weight gain/dietary noncompliance." (A.R. 36). See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ may consider an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment) (citing Tomasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)).

Thus, the ALJ found that Plaintiff's subjective complaints outweigh the objective findings and, as such, Plaintiff's "allegations, though evaluated, are not considered entirely credible." (A.R. 37). The objective medical evidence did not support Plaintiff's asserted functional limitations, Dr. Weingarten's review of the medical records corroborated this finding and found that Plaintiff's Graves's disease was under control and his diabetes produced no known complications, and the consultative examination did not reveal anything orthopedically wrong with the Plaintiff or provide any support for Plaintiff's alleged symptoms. These reasons sufficiently allow the Court to conclude that

23

the ALJ discounted Plaintiff's credibility on permissible grounds.  The Court therefore defers to the ALJ's credibility determination.  <u>See</u> <u>Lasich v. Astrue</u>, 252 Fed. Appx. 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); <u>accord</u> <u>Flaten v.</u> <u>Secretary of Health and Human Services</u>, 44 F.3d 1453, 1464 (9th Cir. 1995).  Where the ALJ has made specific findings justifying a decision to disbelieve Plaintiff's symptom allegations and those findings are supported by substantial evidene in the record, "we may not engage in second guessing."  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

<b>CONCLUSION</b>

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  July 11, 2014.

_/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE